Frank Templeton et al. v. Catherine Ferguson et al.

No. 356.—Decided December 16, 1895.

1. **Jurisdiction—When Questioned.**

The question of the validity of judicial proceedings for want of jurisdiction may arise in—

(1) Cases over which a court, under the very law of its creation, has not possible power, i. e., administration upon the estate of a living person, etc. In such cases the law raises no presumption in their support.

(2) Cases over which the law has conferred upon the court general judicial power, but its right to exercise it in a particular case is challenged upon the ground that no such state of facts existed, or that no such preliminary steps had been taken as authorized the court to exercise its powers in the given case. (P. 54.)

2. **Direct and Collateral Attack Upon a Judgment.**

Crawford v. McDonald, 88 Texas, 630, adhered to in defining and discussing what are direct attacks and what are collateral attacks upon judgments, and the principles governing such attacks. (P. 55.)

3. **Jurisdiction in Probate.**

In July, 1837, the Probate Court of Harrisburg County had power to grant administration upon the estate of one of Fannin's men killed in April, 1836, although the residence of the deceased was not in the county; it not being proved that he was not a citizen of the Republic. (Pleasants v. Duncan, 47 Texas, 343; Brockenborough v. Melton, 55 Texas, 504.) (Pp. 55, 56.)

4. **Want of Assets as Ground for Attacking Administration.**

That it was alleged in the application for letters of administration that the heirs of the deceased had transferred their interest in the estate to the applicants for letters, did not affect the power of the court to grant administration. (P. 56.)

5. **Irregularities—Application Upon Several Estates.**

Application was made for administration upon three estates. The court, by one order, granted the letters, prescribing amount of bond in each. This irregularity did not render the administrations void. (Clayton v. Hurt, 88 Texas, 598.) (P. 56.)

6. **Probate Sale—Presumptions to Support.**

The probate court having general jurisdiction in administrations, if the record in an administration ordering sale does not negative the existence of the facts authorizing the order for sale, the law conclusively presumes, in a collateral attack, that such facts were established by the evidence before the court when such order was made; and evidence of matters de hors the record will not be received. That the record does not show indebtedness does not negative the existence of debts against an estate. (Pp. 56, 57.)

7. **Deceased Soldiers—Citizens.**

See evidence held insufficient to show that the deceased was not a citizen and that the estate was subject to the legislation enacted for the protection of the rights of heirs of deceased soldiers, volunteers from a foreign country. (P. 58.)

Error to Court of Civil Appeals for First District, in an appeal from Harris County.

This was an action in trespass to try title brought by heirs of J. B. Murphy, a soldier in Fannin's command, for land patented under a bounty warrant issued to his heirs. The defendants claimed under an administrator's sale of the warrant made in an administration in Harrisburg County, Texas. The plaintiffs recovered judgment in the District Court. On appeal the judgment was reversed and rendered for the defendants. The plaintiffs obtained a writ of error.

*Rector, Thompson & Rector,* for plaintiffs in error.—The Probate

Court of Harris County did not have jurisdiction of the estate of Jas. B. Murphy: (1.) Because if the petition for administration was true there was no estate of Jas. B. Murphy to be administered. (2.) Because said Murphy was not at the time of his death an inhabitant or resident of Harrisburg County. (3.) Because he did not die in said county, and had no property in said county at the time administration was taken out or at any time prior thereto; and (4.) Because application was made for administration upon three estates together. Hartley's Digest, arts. 252, 269; Sayles' Early Laws of Texas, 576, art. 1555, sec. 3; Paschal's Ann. Dig., art. 329; Duncan v. Veal, 49 Texas, 603; Paul v. Willis, 69 Texas, 261; Hearn v. Camp, 18 Texas, 546; Merriweather v. Kennard, 41 Texas, 273.

The pretended administration sale of the certificate, by virtue of which the land in controversy was sold, was void; first, because said order of sale was not approved by the Secretary of War, and because the record shows that the sixty days' notice by publication was not given as required by law; second, because the record shows that said sale was not ordered or made to satisfy debts against the estate; third, because the records of said Probate Court do not sufficiently identify the grantee, and do not sufficiently describe the certificate sold, to identify it as the certificate laid upon the land in controversy; fourth, because there was no confirmation of said sale by said court. Hartley's Digest, 984 to 989; Harris v. Graves, 26 Texas, 577; Withers v. Patterson, 27 Texas, 491; Gillenwaters v. Scott, 62 Texas, 672; Wardrup v. Jones, 23 Texas, 489; Merriweather v. Kennard, 41 Texas, 277; Garnett v. Garnett, 7 T., B. Monr. (Ky.) 545; Newton v. McKay, 29 Mich., 1; Wofford v. McKinna, 23 Texas, 44; Massies' heirs v. Long, 2 Ohio, 287; Shackelford v. Bailey, 35 Ill., 391.

*Thomas M. Joseph*, for defendants in error.—The Probate Court of the county of Harrisburg had jurisdiction of the estate of James B. Murphy, deceased, and administration thereon was legally opened in said court in said county. Pleasants v. Dunkin, 47 Texas, 343; Brockenborough v. Melton, 55 Texas, 504.

The petition filed for letters of administration on the estate of James B. Murphy, in the Probate Court in 1837, called into exercise the jurisdiction of the court. The court acted, and its action, by order appointing the administrators of said estate, can not be brought in question collaterally. The judgment of the court is an adjudication upon all the facts necessary to give jurisdiction. Sec. 24, Act of 1836, art. 252, Hartley; Mills v. Herndon, 60 Texas, 353; Martin v. Robinson, 67 Texas, 379; Mills v. Herndon, 77 Texas, 89; Lyne v. Sanford, 82 Texas, 58; Kleinecke v. Woodward, 42 Texas, 311; Louder v. Schluter, 78 Texas, 105; Black on Judg., sec. 277; Gregnons, Lessee v. Astor, 2 How., 338.

The Probate Court of Harris County, in the administration of the estate of James B. Murphy therein, had full power and authority to order the sale of bounty certificate 2374 for 640 acres, and the same was a

legal and valid order of sale. The court had jurisdiction in the premises. Lynch v. Baxter, 4 Texas, 431; Alexander v. Maverick, 18 Texas, 179; Davis v. Touchstone, 45 Texas, 490; Hurley v. Barnard, 48 Texas, 83; Robertson v. Johnson, 57 Texas, 62; Baker v. De Zavalla, 1 Poseys U. C., 637; McCamant v. Roberts, 80 Texas, 327; Perry v. Blakey, 5 Texas Civ. App., 331; Houston v. Killough, 80 Texas, 296; Harris v. Brower, 3 Texas Civ. App., 649; Weems v. Masterson, 80 Texas, 45.

The judgments of domestic courts of general jurisdiction, acting within the scope of their powers, can not be collaterally attacked. As to such courts every presumption will be indulged in favor of the record. Sutherland v. DeLeon, 1 Texas, 250; Lee v. Kingsbury, 13 Texas, 68; Tadlock v. Eccles, 20 Texas, 782; Willis v. Ferguson, 46 Texas, 496; Black on Judgments, sec. 277; Freeman on Judgments, sec. 124; Elliot v. Piersol, 1 Pet., 340; Gray v. Brignardello, 1 Wall., 627; Gunn v. Plant, 94 U. S., 664; Grignon's Lessee v. Astor, 2 How. U. S., 319; Woodman v. Smith, 37 Me., 21; Gorrill v. Whittier, 3 N. H., 265; Hendricks v. Whittemore, 105 Mass., 23; Paul v. Smith, 82 Ky., 451; Morris v. Gentry, 89 N. C., 248; Bush v. Lindsey, 24 Ga., 245

The probate courts of Texas have general jurisdiction over the estates of deceased persons, and their judgments relative to the subject matter stand upon the same footing as the judgment of any other court of general jurisdiction. Alexander v. Maverick, 18 Texas, 179; Guilford v. Love, 49 Texas, 715; Murchison v. White, 54 Texas, 82; Herndon v. Heirs of Kuykendall, 58 Texas, 348; McNally v. Haynes, 59 Texas, 583; Mills v. Herndon, 60 Texas, 353; Weems v. Masterson, 80 Texas, 45; Martin v. Robinson, 67 Texas, 379; Giddings v. Steele, 28 Texas, 749; Williams v. Ball, 52 Texas, 607; Fitch v. Boyer, 51 Texas, 336; Saul v. Frame, 3 Texas Civ. App., 596; Flenner v. Walker, 5 Texas Civ. App., 145; Storer v. Lane, 1 Texas Civ. App., 250; Williams v. Haynes, 77 Texas, 284.

The Probate Court of Harris County had general jurisdiction of the estates of deceased persons, and in making the orders and rendering the judgments in the estate of James B. Murphy, deceased, was exercising its ordinary powers, and its orders, judgments and proceedings were not void, and cannot be questioned collaterally. All presumptions will be indulged in support of its action, and the same will be upheld if facts could have existed that would authorize the action taken. Poor v. Boyce, 12 Texas, 440; Dancy v. Stricklinge, 15 Texas, 557; Burdett v. Silsbee, 15 Texas, 615; Shannon v. Taylor, 16 Texas, 413; Baker v. Coe, 20 Texas, 429; Black on Judgments, sec. 270; Freeman on Judgments, sec. 124; Voorhees v. Bank of United States, 10 Pet., 449; United States v. Arredondo, 6 Pet., 729; Secrist v. Green, 3 Wall., 744.

DENMAN, ASSOCIATE JUSTICE.—The evidence in the record shows:

1. That James B. Murphy came from Georgia to Texas as a soldier under Fannin; that he was a member of Captain Wadsworth's company, and was killed at Goliad, while carrying a dispatch from Ward to

Fannin, a few days before the Fannin massacre in 1836; that he "never located or lived in Texas only in the service under Fannin."

2. That during the July term, 1837, of the Probate Court of Harrisburg County, Republic of Texas, Wynne and Lawrence, composed of Archibald Wynne and William Lawrence, representing themselves to be attorneys in fact of William Bressie, filed a petition in said court representing "that James G. Aldridge, Thomas Rogers, and James B. Murphy, who departed this life some time in the year 1836, intestate, were soldiers in the service of the Republic aforesaid previous to the organization of said Republic into counties; that said Bressie has purchased the claims of the persons aforesaid from their legal representatives in the United States, and has power from said persons to settle said claims in such manner as they themselves might have done could they have been present; which said powers of attorney, with a power of attorney from the said Bressie, are now in the possession of your petitioners, authorizing and empowering them to administer upon the estates of the persons aforesaid;" and praying that they be appointed to administer said estates in accordance with law.

3. That at the same term said court entered the following order: "Estates of James Rogers, Thos. G. Aldrich, and James Murphy. Republic of Texas, county of Harrisburg. Probate Court, July term, 1837. A. Wynns and W. Lawrence, appeared in open court and applied for the administration of the estate of Thomas G. Aldrich, James Rogers, and James Murphy, deceased, and the said Wynns and Lawrence having complied with all the requisitions of the law, and there being no legal objections filed to their appointment, it is ordered by the court that the said Wynns and Lawrence be, and they are hereby appointed administrators of said estate, with full and ample powers to settle the same according to law, always subject to the decrees and orders of this court.

Ordered that the said Wynns and Lawrence give bond and security in the amount of one thousand dollars for each estate with the usual condition."

4. That in pursuance of said order said administrators entered into a bond of a thousand dollars in each of said cases, which was duly approved by the court.

5. That the records of the land office show that the following certificates had been issued at the respective dates shown thereon:

"No. 1841.                                       1280 Acres.

Republic of Texas.

Know all men to whom these Presents shall come:

That Jas. B. Murphy, having served faithfully and honorably for the term of three months from the twenty-third day of December, 1835, until the twenty-seventh day of March, 1836, and being honorably discharged from the army of Texas, is entitled to twelve hundred and eighty acres bounty land, for which this is his certificate.

In testimony whereof I have hereunto set my hand at Houston, this day of January 13th, 1838. Approved 27th Aug., 1845.

W. G. Cooke, Sec. War and Marine
Barnard E. Bee, Sec. War."

(J. S. Snydor.)

"165

This is to certify that the heirs of James B. Murphy, deceased, has appeared before the Board of Land Commissioners for the County of Harrisburg, and proved according to law that he arrived in this country in the fall of eighteen hundred and thirty-five, and that he was a single man and entitled to one-third of a league of land, upon the condition of paying at the rate of five dollars for every labor of irrigable land, three dollars and fifty cents for every labor of temporal or arable land, two dollars and forty cents for every labor of pasture land, which may be contained in the survey secured to him by this Certificate.

Given under our hands this fifth day of February, 1838. N. J. Dobie, President; Thos. M. Ward, Wm. P. Harris, Associate Commissioners. Attest: A. Jackson Davis, Clerk."

"No. 2374. Republic of Texas. 640 Acres.

Know all men to whom these presents shall come: That James B. Murphy, having served faithfully and honorably for the term of three months from the twenty-third day of December, 1835, until the twenty-seventh day of Mar., 1836, and being honorably discharged from the army by death, is entitled to six hundred and forty additional acres bounty land, for which this is his certificate. * * *

In testimony whereof I hereunto set my hand at Houston, the thirteenth day of February, 1838. Approved May 15, 1846. Wm. G. Cooke, Adj. Gen'l. Barnard E. Bee, Sec. War.

Paymaster General."

6. That after the issuance of these certificates said administrators, on the 26th day of March, 1838, filed in said court a paper in the following words, namely:

"An inventory of all the property belonging to the succession of James B. Murphy, which has come into the hands of A. Wynns and W. Lawrence, of Harrisburg County, administrators of said succession, as appraised by James S. Holman and Thomas H. Mulryne, appraisers appointed by the Court of Probates of this county for this purpose, viz: One third of a league of land as a headright acquired by virtue of a residence in the Republic at the time and prior to the date of the declaration of independence, for which a certificate has issued, after the proof being made, valued at six hundred dollars; a certificate of nineteen hundred and twenty acres of bounty land for having volunteered during the war and being slain, estimated at three hundred and thirty-seven dollars and fifty cents ($337.50); twenty-five dollars and five cents military scrip for three months' service, estimated at twenty-five dollars ($25); whole

amount of unlocated land claims three thousand three hundred and nine-ty-six acres, estimated at nine hundred and thirty-seven dollars and fifty cents ($937.50); twenty-five dollars and five cents military scrip, esti-mated at twenty-five dollars, total valuation, $962.50. There are no debts. due to the estate that the administrators are informed of."

7. That thereafter the court in said administration made the follow-ing orders:

"February term,—March 1, 1839. A. Wynns appeared and filed the: following acct. current with the succession and surrendered to the court. a certificate for 640 acres, and one for 1280 acres of bounty land, and a draft on the treasury for $25.05. The court ordered that the admr. file the certificate for a headright mentioned in the inventory at or before the April term of court and that on so doing they be discharged and fur-ther ordered that they pay all costs."

"April term. April 27, 1840. On motion of C. W. Buckley, attorney for the admr. of this succession, it was ordered by the court that so much of the order entered in the matter of this succession as dismissed the admr. from further action be revoked."

"Republic of Texas,
                    Order of sale made upon Pet. filed Sept. 22, 1840.
County of Harris.
    Being satisfied by the affidavit of A. Wynns of the facts set forth in the within petition, the admr. is authorized to proceed and sell the property mentioned, giving thirty days' notice of the time, place, and terms of sale and the property to be sold, in some newspaper in this county, and make due return thereof in terms of the law. Houston, Sept. 17, 1840. I. N. Moreland, Prob. Judge, H. Co."

8. That thereafter, on the 4th day of December, 1840, said adminis-trators in said estate filed the following paper:

"The estate of J. B. Murphy, deceased, Account of sales. One-third of a league of land unlocated.

| | |
|---|---|
| To miner ........................................ | $26.80 |
| 1280 acres bounty do. to Sydnor................. | 52.80 |
| 640 acres bounty do. to Sydnor.................. | 28.00 |
| | $107.60 |
| Less auctioneer's commissions.................. | 10.76 |
| | $96.40 |
| $5 military scrip paid to clerk as part of costs con-stituted whole of the property to................ | $4.00 |
| | $100.84 |

Amount brought over.......................... $100.84
Expenditure per contra ...........................  98.80

Balance due the estate........................  $2.04

Charges against the estate—

Counsel fee ...................................... $30.00
James B. Murphy, from pages 426..................
Board of Land Comrs..............................  ·5.00
For certf. of headrights..........................  5.00
Notice of sales in Starr..........................  2.00
Notice of sales in Times..........................  2.00
Charges paid out for letters, judges, etc..............  9.00
Administrator's commissions ......................  10.00
Clerks, sheriff and· court fees......................  40.80

Whole amount of expenditures.................. $98.80

The above contains an account of said estate on final settlement. The same having· been fully administered—the administrators pray the same to be closed up and they discharged. Wynns and Lawrence, admrs. Republic of Texas, ·County of Harris.

Before me, John Allen Southmayd, Dept. Clerk in and for the County ·of Harris aforesaid, this day came A. Wynns, administrator of the estate of J. B. Murphy, deceased, who declared on oath that the within presents a true and final account on himself as administrator, with the said suc- ·cession of J. B. Murphy, deceased; that it accounts for all the property that has come to his possession or of which he has any knowledge; and that he has administered the succession to the best of his skill and ability.

Houston, Dec. 4, 1840. J. A. Southmayd, Dept. Clk. H. C."

9. That upon said account was endorsed the following order:

"Examined and approved. Let the within account be entered on rec- ord and the administrator with his sureties be discharged upon payment of all costs and the balance due as per account rendered Dec. 4, 1840.

J. N. Moreland, Prob. Judge H. C.
Sol. Child, A. J. P. C., H. C.

CLOSED."

10. That there is no direct evidence in the record as to whether the administrators, in pursuance of said order of sale and account of sale, ·ever executed a conveyance to said 640-acre certificate to Sydnor, and it was shown that at the date of the trial the application for the sale could not be found among the records of the Probate Court of Harris ·County; and no attempt was made to prove the contents thereof.

11.   That the land in controversy herein was surveyed in Harris County by virtue of said 640 acre certificate on the 27th day of January, 1846, and patented to James B. Murphy on the 18th day of May, 1846, and the same was assessed for taxes by John S. Sydnor for the years of 1846 and 1847, and has been continually since that date assessed and taxes paid by defendants in error and those under whom they claim, claiming the same under the said Sydnor.

12.   That John S. Sydnor in an early day dealt largely in land and land certificates, and that on the 6th day of April, 1849, by warranty deed recorded in the records of Harris County, Texas, in June, 1849, he conveyed said land in consideration of $320 to N. A. Ware, grantor and grantee both being residents of Galveston County, said deed reciting that the land had been conveyed to the said Sydnor by the administrator of James B. Murphy by deed dated at Houston, November 9, 1840.

This is an ordinary action of trespass to try title, brought by plaintiffs in error, heirs of James B. Murpny, against defendants in error, heirs of said Ware, who pleaded not guilty. The case was tried before the court below, who rendered a judgment for plaintiffs in error for the land. Thereupon defendants in error appealed to the Court of Civil Appeals, which court reversed the judgment of the court below and rendered judgment for defendants in error, and plaintiffs in error thereupon brought the cause by writ of error to this court.

If the administration sale passed the title to said certificate to John S. Sydnor, the judgment of tne Court of Civil Appeals must be affirmed.

The first assignment is to the effect that the court erred in not holding that the Probate Court of Harrisburg County had no jurisdiction of the estate of Murphy, and that the entire administration proceedings were for that reason void, in that Murphy was not at the time of his death an inhabitant or resident of said county, did not die therein, and did not, at the time administration was granted, nor at any time prior thereto, have any property therein.

Jurisdiction is the power of a court to hear and determine a cause and enforce its decree. The exact legal signification of the word varies with the circumstances under which it is used, and a failure to observe this fact often produces confusion and leads to the statement of inaccurate legal propositions.

The question of the validity of judicial proceedings for want of jurisdiction arises in two classes of cases.

Thus, there are classes of cases over which a court has not, under the very law of its creation, any possible power: e. g., an administration upon the estate of a living person, administration upon the estate of a deceased soldier when prohibited by statute, and administration in bankruptcy upon the estate of a person deceased before the institution of the proceedings, a suit for divorce in a foreign country in which neither of the parties is domiciled, or a suit to recover against a non-resident upon service by publication a purely personal judgment. In such cases the entire proceedings are coram non judice, the law raises no presumptions

in their support, and the facts bringing any particular case within one of such classes may be established by evidence dehors the record, either in a direct or collateral attack, for the purpose of destroying the apparent binding force of such proceedings. This is upon the principle that the court, being as a matter of law without power to investigate or determine any question connected with such matters, can not, by a clear usurpation of power, preclude inquiry into the facts establishing such usurpation and the consequent nullity of its proceedings. In such cases the court is without jurisdiction of the subject matter, the status of the parties, or the person of the defendant, as the case may be, and other courts have no difficulty or hesitation in ignoring its proceedings or decrees.

Again, there are classes of cases over which the law has conferred upon the court general judicial power, but its right to exercise such power in a particular case is challenged and the nullity of its proceedings urged, not upon the ground that the case does not belong to one of such classes, but upon the ground that no such state of facts existed or that no such preliminary steps had been taken, as authorized the court to exercise its powers in the given case: e. g., where the power of a Probate Court to grant an administration of an estate or to make an order of sale in a pending administration is called in question, and the validity of its proceedings denied on the ground that no necessity therefor existed, or where the validity of a personal judgment against a resident is questioned upon the ground that the court had not, by service of process or otherwise, acquired jurisdiction over the person of the defendant.

Much difficulty has been encountered by the courts, in passing upon this class of cases, in their efforts to shield the citizen from the unwarranted and oppressive exercise of judicial power without unduly prejudicing the property interest of the country, largely dependent upon the validity of judicial proceedings. The validity of the proceedings for want of jurisdiction may be raised in this class of cases, as in the other, in either a direct or collateral attack. On account, however, of the legal presumptions indulged in favor of the validity of the proceedings in this class, which we have seen do not obtain in the other, the time and circumstances under which the attack can be made, the character of evidence by which it must be supported, especially when the attack is collateral, the power of the court to impose terms as a condition of relief against the record supported by such presumptions, and the ultimate rights of the parties in case the attack is successful, are in many instances entirely different in the two classes.

What is a direct and what a collateral attack, and the reasons why, in a collateral attack on a judgment of the class under consideration, evidence of matters dehors the record will not be received, having been discussed in the case of Crawford v. McDonald, recently decided by this court (88 Texas, 630) and cases therein cited, need not be here restated. It may be well to state, however, that the opinion in that case had no reference whatever to the first class of causes above noticed.

Plaintiffs in error contend that under a proper construction of the

act of 1836, under which this administration was granted, the Probate Court of Harrisburg County had no power to grant administration upon an estate unless the decedent was an inhabitant or resident of such county at the time of his death, and that therefore said court, under the evidence in this case, had no jurisdiction over the estate of Murphy, and its proceedings were wholly void under the rules of law applicable to the first class of cases above discussed. This question was decided adversely to this contention in Pleasants v. Dunkin, 47 Texas, 343, and followed in Brockenborough v. Milton, 55 Texas, 504, and may be considered settled law.

It is true that the subsequent legislation, referred to in the opinion in the first case as persuasive of the construction adopted, had not been enacted when the administration herein was granted. Such legislation, however, did not enlarge but restricted the jurisdiction of the Probate Court under said act of 1836 as to a certain class of non-resident soldiers, thereby indicating that in the opinion of the lawmaking power such courts were not restricted in their jurisdiction by said act as contended by plaintiffs in error. The court simply adopted the legislative construction, and we see no reason to question its correctness.

We are of the opinion that the assignment is not well taken; that the court had jurisdiction over the class of cases to which Murphy's estate belonged, and that this case belongs to the second class of cases above discussed. It will be so considered in passing upon the remaining assignments.

The next assignment is to the effect that the administration was void, because the petition therefor shows that there was no estate of Murphy to be administered.

This assignment is predicated upon the statement in said petition that Bressie had purchased the claims of the heirs and that, therefore, it was virtually an administration upon his own estate. If, however, the allegation be taken as establishing the purchase, it merely transferred to Bressie the interest of the heirs, but such transfer could not defeat or affect the power of the court to administer upon the estate of Murphy.

The next assignment is to the effect that the court erred in not holding the administration void, because the application was made for administration on three estates in one petition and granted in one order.

This was a mere error in procedure which can not affect the validity of the proceedings in this collateral attack. It is well settled that where a court of general jurisdiction, in the exercise of its ordinary judicial functions, renders a judgment, in a cause of which it has jurisdiction, such judgment is never void, no matter how erroneous it may appear, from the face of the record or otherwise, to be. (Clayton v. Hurt, recently decided by this court and cases cited, 88 Texas, 598.)

The next two assignments are as follows: "The court erred in not holding said administration void, because the record shows that there were no debts due from said estate;" and "the court erred in not holding

the sale void, because the record shows that it was not ordered or made to satisfy debts against the estate of Murphy."

These assignments raise the question indicated in the discussion of the second class of cases mentioned under the first assignment, to the effect that, though the court may have had power to grant administrations in the class of cases to which Murphy's estate belonged and may have had power to grant orders of sales of property, yet "no such state of facts existed" "as authorized the court to exercise its powers" in this case, either to grant the administration or order the sale.

They will therefore be considered together.

We pass without comment the question as to whether the existence of debts was necessary to authorize the grant of administration. Assuming that it was necessary to the validity of the order granting administration, as well as the order authorizing the sale, the question presents itself, does the record negative the existence of debts when read in view of the presumptions indulged by the law in support of the validity of such orders?

Under repeated adjudications in this State, by these assignments a collateral attack is made upon judgments of a domestic court of general jurisdiction of estates of decedents, by parties to the proceedings in which such judgments were rendered. (Crawford v. McDonald, supra.)

In such cases it may be considered the settled rule that, if the record of the cause in which such judgments were rendered does not negative the existence of the facts authorizing the court to make the particular order, the law conclusively presumes that such facts were established by the evidence before the court when such orders or judgments were rendered, and evidence of matters dehors the record to the contrary will not be received. As said by Justice Stayton in his able opinion on this subject in Martin v. Robinson, 67 Texas, 375: "Such a court must determine whether the facts exist which make it lawful for administration to be granted in the county in which the court sits; and if, in this respect, having power to make the inquiry, it comes to an erroneous conclusion, its decree founded on such conclusion is voidable but not void." (Crawford v. McDonald, supra.)

The petition for administration is silent as to the existence of debts, and the application for the order of sale has been lost and its contents not shown. In such cases it must be presumed that the court found the existence of debts. The fact that the final account did not show any debts antedating the administration does not rebut the presumption in favor of the judgment of the court, for such debts may have existed and never have been presented or allowed.

There is no fraud shown in this case, the administration purports to have been had at the instance of the legal assignee of the heirs, no question is made as to the truth of the recitals in the petition for administration, and therefore we are not called upon to decide the question as to whether any presumptions will be indulged in support of decrees rendered in a fraudulent administration.

The next assignment is to the effect that the court erred in not holding the sale void, because not approved by the Secretary of War, and sixty days' notice thereof was not given as required by the statutes in force at time of the sale in reference to administration upon the estates of deceased soldiers. (Act approved May 18, 1838; Act approved December 24, 1838.) It is a sufficient answer to this objection to say that those statutes had no application to citizen soldiers, and the evidence above quoted, to the effect that Murphy came here as a soldier, and was killed at Goliad, and that he "never located or lived in Texas only in the service under Fannin," does not conclusively establish that he was not a citizen soldier, for he would be such if under the facts he intended to remain in Texas. The Probate Court, in passing upon the length of time notice should be given, must be presumed to have known that the laws in force required different notice as to citizen and non-citizen soldiers, and by expressly directing thirty days' notice to be given in the order of sale must be presumed to have passed upon the question and determined that Murphy was a citizen soldier; and its judgment must be presumed correct in this proceeding in the absence of clear proof to the contrary. Again, the inventory and the headright certificate were read in evidence without objection, and we can not say that they did not justify the finding of the Court of Civil Appeals to the effect that Murphy was a citizen soldier. They seem to indicate that the Probate Court and the officers issuing the certificates, as well as Bressie and his attorneys, at the time so regarded him

Without entering into any discussion of the subject, we are of the opinion that after so long a lapse of time, connected with the fact of open and constant assertion of title to the land by those claiming under the probate sale, the evidence was amply sufficient to establish the fact that John S. Sydnor was the purchaser of the 640-acre certificate at such sale, and that the administrator duly transferred same to him.

The judgment of the Court of Civil Appeals is affirmed.

*Affirmed.*