**MILNER v. GATLIN et al.** (No. 2072.)

(Court of Civil Appeals of Texas. Texarkana. April 25, 1919. Rehearing Denied May 8, 1919.)

1. COURTS ⟨⟩=91(1) — RULES OF DECISION — DENIAL OF WRIT OF ERROR.

Supreme Court by denying writ of error will be presumed to have concurred in the conclusion reached by the Court of Civil Appeals.

2. DIVORCE ⟨⟩=303(1) — DECREE — MODIFICATION—CUSTODY OF CHILD.

District court may modify divorce decree at a term subsequent to that at which it was rendered, by transferring custody of infant child of the parties from one to the other.

3. JUDGMENT ⟨⟩=497(2)—COLLATERAL ATTACK —RECITALS OF JURISDICTIONAL FACTS.

Recitals of judgment concerning service of process import absolute verity, and cannot be contradicted or disproved in a collateral proceeding by extrinsic evidence.

4. DIVORCE ⟨⟩=303(1)—COLLATERAL ATTACK— SERVICE OF PROCESS UPON NONRESIDENT— MODIFICATION OF DECREE.

In action against plaintiff's divorced wife for custody of infant child awarded him by divorce decree, the defense being a modification of the decree by transferring custody to wife, where there is nothing in the record upon which the judgment as modified was founded showing affirmatively plaintiff's nonresidence, he will not be permitted to contradict the recital of the judgment as modified, as to issuance and service of citation upon him, by proving by evidence de hors the record that valid service of notice of the motion to modify judgment was not had on him because he was in fact a nonresident.

5. DIVORCE ⟨⟩=303(1) — MODIFICATION — DIVORCE DECREE—JURISDICTIONAL FACTS.

In husband's action against divorced wife for custody of infant child awarded him by divorce decree, where defense is that decree has been modified by giving wife custody of child, husband will not be permitted to show, by evidence aliunde the record, that court at time of modification of judgment had no jurisdiction over child because it was a nonresident at such time; it being presumed in a collateral attack upon a judgment that jurisdiction attached.

Hodges, J., dissenting.

Appeal from District Court, Lamar County; A. P. Dohoney, Judge.

Action by C. W. Milner against Mary F. Gatlin and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Appellant and appellee Mary F. Gatlin were husband and wife prior to May 18, 1911, when they were divorced by a decree of a district court for Dallas county. Lucile, a girl 9 or 10 years old, was a child of the marriage between appellant and said appellee. This was a suit by appellant against said appellee and appellee John Gatlin, whom

---

she married after she was divorced from appellant, for the custody of said child. In his petition for the writ of habeas corpus appellant alleged that the decree of said district court of Dallas county awarded to him the exclusive care and custody of the child. He further alleged that said Mary F. Gatlin afterward kidnapped the child in the state of Georgia, where she (the child) and he then resided, and removed her to Lamar county, Tex., where, he alleged, said Mary F. Gatlin and her husband were harboring and restraining her. In their answer to said petition appellees alleged that on August 20, ·1912, the decree of the Dallas county district court, in so far as it awarded the custody of the child to appellant, was by that court "revoked, annulled and· held for naught," and that that court then rendered and entered a decree awarding the care, custody, and control of the child to appellee Mary F. Gatlin. A copy of said decree (of August 20, 1912) was attached to and made a part of said answer. With reference to that decree appellant, in a supplemental petition, alleged as follows:

"It is true that there was a so-called amendatory judgment entered in cause No. 9255, Milner v. Milner, in August, 1912, but that said judgment was null and void and of no effect, for the reason that at said time and for a long time prior thereto the plaintiff, C. W. Milner, and his child, Lucile Arza Milner, were actual, bona fide, and legal residents and inhabitants of the state of Georgia, and had so been since immediately after the entering of the judgment of divorce between the said Milner and his wife, Mary, in 1911, out of which suit judgment was rendered, giving him the custody of said minor, and in no manner denying him the right to move and make his habitation wherever he saw fit, and that immediately after the entering· of said judgment he moved to Georgia and made his domicile therein, and that no legal service was ever had upon him of the motion of the defendant, Mary F. Milner, to reform or modify the said 1911 judgment, and, in fact, the Sixty-Eighth judicial district court of Dallas ·county was without jurisdiction to change or modify such judgment, since it was in personam, and at another term, and when the plaintiff was not a resident of Texas nor of said judicial district. Said motion to reform so showing and praying for service of notice upon him in the following words: 'The said C. W. Milner upon whom service is desired resides in ·Wilner, Pike county, Ga., to which place it is desired that notice issue'—and said notice was handed ,plaintiff by the sheriff of Pike county, Ga., in said Pike county, Ga., and not otherwise nor elsewhere was service had upon the plain-.tiff."

An exception interposed by appellees to the part of the supplemental petition set out above, on the ground that same was "but an attempt," quoting, "to collaterally impeach a judgment rendered by a domestic court of general jurisdiction over the subject-matter by pleading matters dehors the record," was sustained by the trial court·; and, appellant having agreed that if said exception was sustained he "would have no cause of action," said court rendered judgment denying him the relief he prayed for. The appeal is from that judgment.

Wm. H. Atwell, of Dallas, for appellant.

A. P. Park and Moore & Hardison, all of Paris, for appellees.

WILLSON, C. J. (after stating the facts as above). The trial court treated the part of the supplemental petition set out in the statement above to which he sustained an exception, as an offer by appellant to show by proof aliunde the record in the divorce case and the record of the proceedings to modify the judgment rendered in said case May 18, 1911, that the district court of Dallas county was without power to modify said judgment as he undertook to do by his order of August 20, 1912. That appellant acquiesced in that view of his said pleading is shown by the fact that he makes no complaint here of the action of said court in dismissing the suit. The contention here is that the trial court erred when he sustained said exception. Whether he did or not, viewing the pleading as he viewed it, we think depends upon the answers which should be made to questions hereinafter stated. If the answer to any one of those questions should be in the affirmative, we think the exception should have been overruled.

1. One of the questions presented by allegations in the part of the supplemental petition in question may be stated as follows: Was the district court of Dallas county without power, at a term subsequent to the one at which same was rendered, to so modify its decree of May 18, 1911, as to transfer the care and custody of the minor from appellant to appellee Mrs. Gatlin?

In Hall v. Whipple, 145 S. W. 308, the Court of Civil Appeals for the First District approved the following as a correct statement of the law:

"The right to and custody of a minor is a question over which courts of equity have jurisdiction, and an order of the district judge in relation thereto is always subject to modification or change upon a proper showing."

In Plummer v. Plummer, 154 S. W. 598, decided by this court, it was said:

"The general doctrine is that the jurisdiction of the court over the custody and support of minor children in divorce cases where the divorce is granted is a continuing one, and the court may modify or alter its order for custody or maintenance originally made as new issues or the changed circumstances of the parties may arise."

[1] Construing the statement just quoted from the Plummer Case as a holding that the power to modify such an order was an ex-

clusive one, in that no other district court than the one granting the divorce could exercise it, the Court of Civil Appeals for the Fourth District challenged its correctness in Gazell v. Garcia, 187 S. W. 410. Nevertheless, that (the Gazell) Case supports the ruling of the trial court in this one, for it was there held that any district court has power, if the welfare of the minor, because of changed conditions, requires it, to so modify such an order 'as to take the minor from the custody of one to whom he was awarded in divorce proceedings and place him in the custody of another person. As the writ of error applied for in the Gazell Case was refused, it is fair to assume that the Supreme Court concurred in the conclusion reached therein.

[2] On the authority of the cases mentioned, and Wilson v. Elliott, 96 Tex. 472, 73 S. W. 946, 75 S. W. 368, 97 Am. St. Rep. 928, Ex parte Reeves, 100 Tex. 617, 103 S. W. 478, and Smith v. Long, 181 S. W. 478, we think the question stated should be answered in the negative.

2. Another question presented by the ruling of the trial court may be stated as follows: Assuming that service on appellant in this state of notice of the motion to so modify said decree of May 18, 1911, was necessary to the exercise of such power by the Dallas county district court, did it appear that appellant was entitled in this proceeding to deny that such service was had on him?

The decree of August 20, 1912, contained a recital that "it appeared to the court that proper issuance and service of citation was had upon the said C. W. Milner, and that the said C. W. Milner, though duly cited to appear, came not," etc.

[3] In 23 Cyc. 1086, the rule believed to be applicable is stated as follows:

"In the case of a judgment of a domestic court of general jurisdiction the great majority of the decisions sustain the rule that its recitals concerning the service of process or the other facts on which its jurisdiction is founded import absolute verity and cannot be contradicted or disproved in a collateral proceeding by any extrinsic evidence."

[4] There is no doubt the proceedings resulting in the judgment appealed from were "collateral" within the meaning of the rule (23 Cyc. 1062 et seq.; Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325); and hence there also is no doubt (unless, because of the doctrine announced in Pennoyer v. Neff, 95 U. S. 723, 24 L. Ed. 565, the rule does not apply to a defendant who was in fact a nonresident of the state at the time the suit against him was commenced and while it was being prosecuted) that appellant was not entitled to contradict the recital in the judgment as modified by proving by evidence dehors the record that valid service of notice of the motion was not had on him.

In Martin v. Burns, 80 Tex. 676, 16 S. W.

1072, the judgment in question was one for money. It was attacked as void because against a nonresident of the state on service on him of a citation by publication only. It appeared from the record that the citation by publication was on affidavit by the plaintiff that the residence of the defendant in the judgment was unknown. It did not affirmatively appear from anything in the record that the defendant was a nonresident of the state. It was held that the validity of the judgment could not be impeached collaterally by proof aliunde showing that the defendant in fact was a nonresident. The court said:

"This conclusion is not in conflict with the doctrine of Pennoyer v. Neff, but is based entirely upon the absolute presumptions which the law indulges in support of a judgment of domestic court of general jurisdiction and of the verity of its records. It must now be regarded as the settled rule of decision in this state that when applicable the chief principle announced in Pennoyer v. Neff will be observed, and that, when it affirmatively appears from the record that a purely personal judgment has been rendered against a nonresident, and citizen of another state, without appearance or waiver by him, upon citation by publication alone, or by process beyond the state, such judgment cannot be enforced and is subject to collateral attack. This is the extent to which the decisions in this state go."

As we understand it, the ruling in the case first quoted from warrants a negative answer to the question we are discussing. The case has often been cited approvingly, and never so far as we have found disapprovingly, by the courts of this state. Among other cases citing it are these: Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; Gillon v. Wear, 9 Tex. Civ. App. 44, 28 S. W. 1014; Brooks v. Powell, 29 S. W. 809; Hambel v. Davis, 33 S. W. 251; Iiams v. Root, 22 Tex. Civ. App. 413, 55 S. W. 411; Kilmer v. Brown, 28 Tex. Civ. App. 420, 67 S. W. 1090.

In the Iiams-Root Case it was distinctly held that the validity of a judgment of a domestic court of general jurisdiction could not be questioned by evidence aliunde the record of the case in which the judgment was rendered, showing that the defendant in the judgment was a nonresident of the state. The court said with reference to such evidence:

"We do not think that this evidence was admissible, because the judgment sought to be attacked was rendered by a domestic court of general jurisdiction, in a case within the jurisdiction of the court, and it does not affirmatively appear from the record of said cause that the court was without jurisdiction of the person of the defendant, and evidence outside the record will not be heard to contradict the presumption that the court had authority to render the judgment."

Continuing, the court quotes from a Connecticut case (Coit v. Haven, 30 Conn. 190,

79 Am. Dec. 244) the following as showing the reason for the rule:

"It is so necessary that confidence shall be reposed in courts of high character, as well as in the records of such courts, that, on the whole, and in view of all the considerations affecting the subject, it is the only safe rule to give the decisions of courts of general jurisdiction full effect so long as they remain in force, rather than leave them open to be attacked in every way and on all occasions. Being domestic judgments, they can, if erroneous, be reversed by proceedings established directly for the purpose, or reversed on error or by new trial; and, if the danger is imminent and special, relief can be temporarily, if not finally, obtained by application to a court of equity. Any other rule with regard to the judgments of such courts would be attended in its application with very great embarrassment, and would be very dangerous in its operation. The general good clearly requires, and has therefore established, the rule that domestic judgments of courts of general jurisdiction cannot be attacked collaterally."

Cooper v. Newell, 94 Fed. 792, 36 C. C. A. 498, was an appeal to the United States Circuit Court of Appeals from a judgment of the United States Circuit Court for the Eastern District of Texas, which included Brazoria county. The judgment in question was one rendered by the state district court for Brazoria county in favor of McGreal against Newell. It contained a recital that at the time it was rendered Newell was present in court by his attorneys. Said circuit court certified to the Supreme Court a question as follows:

"Was the judgment of the district court of Brazoria county, Tex. (said court being a court of general jurisdiction), in the case of Peter McGreal v. Stuart Newell, subject to collateral attack in the United States Circuit Court for the Eastern District of Texas, sitting in the same territory in which said district court sat, in this suit, between a citizen of the state of New York and a citizen of the state of Texas, by evidence aliunde the record of the state court, showing that the defendant Stuart Newell, in said suit in said state court, was not a resident of the state of Texas at the time the suit was brought, nor a citizen of said state, but a resident citizen of another state, and that he was not cited to appear in said suit, and that he did not have any knowledge of said suit, and that he did not in fact appear in said suit, and that he did not authorize J. A. Swett, the attorney who purported to appear for him in said suit, to make any such appearance, and that the appearance by said attorney was made without his knowledge or consent?"

The Supreme Court answered the question in the affirmative, holding inapplicable the rule enforced where the judgment of a state court of general jurisdiction is attacked in a collateral proceeding in another court in the same state. Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808. The court said:

"The courts of the United States are tribunals of a different sovereignty, and exercise a distinct and independent jurisdiction from that exercised by the state courts, and this is true in respect of the courts of the several states as between each other. And the courts of the United States are bound to give to the judgments of the state courts the same faith and credit that the courts of one state are bound to give to the judgments of the courts of her sister states."

In Cooper v. Mayfield, 57 S. W. 48, decided by the Court of Civil Appeals for the First District, and whose decision was affirmed by the Supreme Court in 94 Tex. 107, 58 S. W. 827, the same judgment of the Brazoria county district court was in question, and it was held by the Court of Civil Appeals that it was not subject to attack collaterally in another state court. With reference to the decision of the United States Supreme Court in Cooper v. Newell, supra, the Court of Civil Appeals said it was—

"put upon the ground that the federal court was not bound to treat the judgment of the state court as if it were a domestic judgment drawn in question in one of the state courts, and to therefore hold that it could not be assailed collaterally, but was no more shut out from examining into jurisdiction than is a circuit court of the United States sitting in another state. * * * Hence the case of Cooper v. Newell does not apply to the question of the attack upon the record of a case in one of the courts of Texas in a suit in another of the courts of this state."

It seems to us that the cases referred to support the conclusion reached in the Martin-Burns Case, that the doctrine announced in Pennoyer v. Neff is inapplicable to a case like this one; and that there is no reason for saying that the judgment in question here is not within the general rule applicable to judgments of a domestic court of general jurisdiction when attacked in a collateral proceeding. Therefore we think the question we have been discussing should be answered in the negative.

[5] 3. A question remaining, and the one we have had most doubt about as to how it should be answered, may be stated as follows: Assuming that the domicile of the minor in this state at the time the Dallas county district court undertook to modify its said decree was indispensable to the validity of its act (Lanning v. Gregory, 100 Tex. 310, 99 S. W. 542, 10 L. R. A. [N. S.] 690, 123 Am. St. Rep. 809), was appellant entitled in this proceeding to show by evidence aliunde the record in the divorce suit that the domicile of said minor was not then in this state, but, instead, was in the state of Georgia? We have finally concluded, on the authority of cases hereinbefore mentioned and many others we have examined, that the question should be answered in the negative, because the judgment is within a rule which has been

stated in 2 Cyc. 1085 (and see Murchison v. White, 54 Tex. 78) as follows:

"In a collateral attack upon a judgment or decrpe it will be presumed that jurisdiction attached, and the judgment is valid where the record, although failing to show jurisdiction affirmatively, yet does not distinctly show a want of jurisdiction, as where the record of a judgment of a court of general jurisdiction is silent as to the facts conferring jurisdiction."

We have not found anything in the record sent to this court showing what, if anything, appeared in the record of. the divorce suit and of the proceedings to modify the judgment therein about the domicile of the minor at any time. The rule, like the other one hereinbefore set out, is based on public policy (Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325), and from that standpoint there is no better reason, as we see it, why appellant in this kind of a proceeding should have been permitted to impeach the validity of the modifying judgment by evidence aliunde the record, showing that the minor was domiciled in another state, than there was why he should have been permitted to impeach it by showing that he was a nonresident of the state, and that, it was rendered against him without service on him of valid process.

Judgment is affirmed.

HODGES, J. (dissenting). In his original petition the appellant pleaded as the basis of his right to the custody of the child involved in this controversy that he was the father, and that on May 18, 1911, in a divorce suit between him and the mother, Mary F. Gatlin, a judgment had been rendered by the district court of the Sixty-Eighth judicial district of Dallas county, Tex., awarding him the exclusive custody. These and other facts alleged as to the manner in which the appellees thereafter secured possession of the child, if true, entitled appellant to a judgment in this suit. As a defense the appellees pleaded that on August 20, 1912, upon a motion filed by them in the same court in Dallas county, the former judgment had been modified, revoked, and annulled, and the exclusive custody of the child awarded to the appellee Mary F. Gatlin. A copy of that judgment is attached to the answer. It contains the following recitals as to service:

"On August 20, 1912, came on a motion to reform . the judgment in the above styled and numbered cause, and that upon such hearing came Mary F. Gatlin, formerly Mary F. Milner, and it appearing to the court that proper issuance and service of citation was had upon the said C. W. Milner, and that the said C. W. Milner, although duly cited to appear. came not, but wholly made default; and thereupon the court, after hearing the evidence from the witnesses, * * * finds that the allegations in defendant Mary F. Gatlin's motion to reform the judgment are true."

The court then proceeded to divest the appellant of his former right of custody upon the ground that he was not a proper person to have the care of the child.

The appellant replied in the language quoted by Chief Justice WILLSON in his opinion. To this reply the court sustained a demurrer. It seems that the trial judge and the attorneys in the case all agreed in construing the appellant's replication as an admission that the judgment pleaded by the appellees was the decree assailed. Viewed in that light, its liability to a collateral attack may be tested by an examination of the pleadings alone.

If the facts alleged by the appellant in his supplemental petition are true that judgment was invalid, and if the state of the record in that case is what he alleges it to be, the invalidity can be shown even in a collateral proceeding like the present. While conceding that when tested by the facts alleged the judgment is void, my Associates take the position that under the record here presented it is valid as against a collateral attack. In other words, it is presumptively valid till set aside in a direct proceeding instituted for that purpose, regardless of the lack of territorial jurisdiction in the court that rendered it over either the person of the defendant in that suit or the subject-matter of the controversy. In determining the legal sufficiency of the appellant's reply, and the state of the record of the Dallas county judgment, we must assume as true all the facts alleged by the appellant, and also the following extract quoted by him from the appellees' motion filed in the Dallas court praying for service of citation:

"The said C. W. Milner, upon whom service is desired, resides in Pike county, Ga., to which place it is desired that notice issue."

This is a part of the record, and shows that the defendant in that suit was a nonresident when those proceedings were instituted; and presumably the child, of which he was then the legal custodian, was also beyond the limits of the state of Texas. Thus the pleadings of the petitioner disclosed upon their face a cause of action over which the trial court whose powers were being invoked had no jurisdiction, and the petition should have been dismissed upon the court's own motion. This, however, was not done. The judgment record does not state what character of service was issued. But we must presume that either none was issued, or that the clerk of the court obeyed the statute.

Article 1852 of our Revised Civil Statutes required process to be issued to the county in which the defendant is alleged to reside. Where the defendant is a nonresident, or is absent from the state, article 1869 requires the clerk, upon application of any party to the suit, to issue a notice addressed to the defendant, requiring him to appear and an-

swer at the time and place named. Article 1870 provides that such notice may be served by any disinterested person competent to make oath of the fact. The appellant alleges that he was served with a nonresident notice while in the state of Georgia, which is conceded to be insufficient to support a judgment by default. But it is contended that the judgment itself recites service, and that this recital is conclusive against a collateral attack. While the judgment does recite that "proper issuance and service of citation was had upon Milner," it does not in terms specify the kind of service—whether it was personal or that provided for in the statute for nonresidents, or whether notice was served within or without the limits of this state. In order to give to this recital the sanctity claimed it must be construed as stating that Milner was personally served with process within the state of Texas. The language used does not, in my judgment, require that construction. The recital is not a finding of a fact, but the statement of a legal conclusion. What is "proper service" is a question of law, and a judgment of the court upon such an issue is entitled to no more respect than is its judgment upon any other question of law involved in the case. But even if the recital should be construed as a finding that the defendant was personally served with process within the state of Texas, other portions of the record showing that he was a nonresident, the conclusiveness of the judicial finding is destroyed. For the usual presumptions in favor of domestic judgments rendered by courts of general jurisdiction do not obtain when the record shows that the defendant is a nonresident. In Kilmer v. Brown, 28 Tex. Civ. App. 420, 67 S. W. 1090, the rule is thus stated:

"A personal judgment against a nonresident, * * * rendered on such constructive service, is void, and will not support a sale of property thereunder. * * * But the judgment of a domestic court of general jurisdiction, having jurisdiction of the subject-matter, rendered against the defendant cited by publication, it not appearing from the record of the cause that the defendant was a nonresident, imports absolute verity, and is not subject to collateral attack."

In the case of Martin v. Burns, cited and relied on in the majority opinion, the Supreme Court appeared to attach much importance to the following conclusion of the trial judge with reference to the judgment there being assailed:

"The record in the cause * * * not showing affirmatively that the defendants were nonresidents of the state, in a collateral proceeding it will be presumed that the court rightfully exercised jurisdiction."

In Templeton v. Ferguson, 89 Tex. 47, 33 S. W. 329, Justice Denman, who had just

written the opinion in the well-known case of Crawford v. McDonald, uses this language:

"The question of the validity of judicial proceedings * * * arises in two classes of cases. Thus there are classes of cases over which the court has not, under the very law of its creation, any possible power; e. g., an administration upon the estate of a living person, administration upon the estate of a deceased soldier when prohibited by statute, an administration in bankruptcy upon the estate of a person deceased before the institution of the proceedings, a suit for divorce in a foreign country in which neither of the parties is domiciled; or a suit to recover against a nonresident, upon service by publication, a purely personal judgment. In such cases the entire proceedings are coram non judice. The law raises no presumptions in their support, and the facts bringing any particular case within one of such classes may be established by evidence dehors the record, either in a direct or collateral attack, for the purpose of destroying the apparent binding force of such proceedings. This is upon the principle that the court, being as a matter of law without power to investigate or determine any question connected with such matters, cannot, by a clear usurpation of power, preclude inquiry into the facts establishing such usurpation, and the consequent nullity of its proceedings. In such cases the court is without jurisdiction of the subject-matter, the status of the parties, or the person of the defendant, as the case may be; and other courts have no difficulty or hesitation in ignoring its proceedings or decrees."

After enumerating a group of legal controversies which fall within the second class, and discussing the policy of protecting judgments rendered therein from collateral attacks, he continues:

"What is a direct and what is a collateral attack, and the reasons why under a collateral attack on a judgment of the class under consideration [second class discussed] evidence dehors the record will not be received, having been discussed in the case of Crawford v. McDonald [88 Tex. 626], 33 S. W. 325 ([then] recently decided), and cases therein cited, need not be here restated. It may be well to state, however, that the opinion in that case had no reference whatever to the first class of causes above noticed."

In the case of Galpin v. Page, 85 U. S. (18 Wall.) 350, 21 L. Ed. 959, the court said:

"Whenever, therefore, it appears from the inspection of the record of a court of general jurisdiction that the defendant, against whom personal judgment or decree is rendered, was, at the time of the alleged service, without the territorial limits of the court, and thus beyond the reach of its process, and that he never appeared in the action, the presumption of jurisdiction over his person ceases, and the burden of establishing the jurisdiction is cast upon the party who invokes the benefit or protection of the judgment or decree. This is so obvious a principle, and its observance is so essential to the protection of parties without the territorial jurisdiction of a court, that we should not have felt disposed to dwell upon it at any length, had

it not been impugned and denied by the circuit court."

In determining what constitutes the record to be examined in ascertaining the jurisdiction of the court the following extract from the opinion in Harris v. Hardeman, 14 How. 334, 14 L. Ed. 444, is pertinent:

"In reviewing the decision of the circuit court, it should be borne in mind, as a rule to guide and control our examination, that the judgment impugned before that court was a judgment by default, and that in all judgments by default, whatever may affect their competency or regularity, every proceeding indeed, from the writ and indorsements thereon down to the judgment itself, inclusive, is part of the record, and is open to examination."

It conclusively appears from the record of the Dallas county judgment that the defendant, the appellant here, was a nonresident, and that the judgment against him was by default. That being the case, there is no such presumption of service as will preclude an inquiry into that fact. If a court acts without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void. Thompson v. Whitman, 85 U. S. (18 Wall.) 457, 21 L. Ed. 897; New Mexico v. Baker, 196 U. S. 432, 25 Sup. Ct. 375, 49 L. Ed. 540; Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808; Clark v. Wells, 203 U. S. 164, 27 Sup. Ct. 43, 51 L. Ed. 138.

In Harris v. Hardeman, supra, the court said:

"Unless a court has jurisdiction, it can never make a record which imports uncontrollable verity to the party over whom it has usurped jurisdiction, and he ought not, therefore, to be estopped from proving any fact which goes to establish the truth of a plea alleging the want of jurisdiction."

This rule has been recognized and applied by the federal courts in every case where a nonresident has assailed the judgment of a state court for want of jurisdiction over his person. It is also in harmony with the doctrine announced by Justice Denman in Temple v. Ferguson, supra. Under that rule the appellant in this case had a right to prove the facts alleged in his supplemental answer. These, if true, were sufficient to show the nullity of the decree upon which the appellees relied.

Whatever may be said in justification of the rule which protects the judgments of domestic courts from collateral attack for lack of jurisdiction over the person of the defendant in controversies between citizens of the same state, it can have no application to nonresident defendants who have not appeared in the case. The immunity of a nonresident from adverse judicial proceedings in a state court is guaranteed by the due process clause of the federal Constitution. This instrument is the supreme law of the land, and its provisions are not to be nullified by any rule of public policy adopted by state courts. The federal Supreme Court is the paramount authority in the interpretation of the Constitution and in determining what proceedings in a state court constitute a violation of its guaranties. Since the decision of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, that court has, without any exception and regardless of the manner in which the question was presented, held that judgments rendered by state courts against nonresidents without service or process within the jurisdiction of the trial court were absolutely void, and unenforceable anywhere. I have been unable to find an instance where the right to interpose that defense has been qualified or made to depend upon the state of the record of the judgment assailed.

The rule could not logically be otherwise. For what the Constitution forbids being done no state court has the power to do. And that which is done in violation of the Constitution is as impotent as if done without any color of authority. To say that a state court, after having usurped authority, may protect its usurpation by making a false record of its proceedings is to legalize an indirect method of evading the Constitution.

It is no answer to say that a nonresident has the right to go into the foreign state and institute in the courts of that jurisdiction a direct proceeding to annul the unlawful judgment rendered against him. His rights are infringed, and the offense against the Constitution is committed by the mere rendition of the illegal judgment, without reference to any future attempts of enforcement. Riverside & Dan Cotton Mills v. Menafee, 237 U. S. 189, 35 Sup. Ct. 579, 59 L. Ed. 910. This provision of the Constitution confers upon every citizen the right to remain in the state of his domicile free from any unlawful exercise of power by the courts of another state. That immunity would be incomplete if he could be compelled to leave his own state and seek relief in the very tribunal that had violated his right.

I have assumed, in discussing this question, that the due process clause of the Constitution is broad enough to include the rights here in controversy. While a child is not to be classed as property, the right of parental custody is something inherent in the status, and when sanctioned by the decree of a court is a right secured by the due process of law. It is a valuable right, not only because it gratifies a natural instinct, but because it carries with it the right to the services and the earnings of the child during its minority. In the interpretation of this protective provision I think it may be extended so as to include every right which may be affected, or taken away, by the decree of a court of justice.

There is still another viewpoint from which the judgment of the Dallas court may

be considered, and that is with reference to the subject-matter of the suit, the custody of the child. If suits of that character so far partake of the nature of actions in rem as to exclude them from purely actions in personam, it is equally clear that the Dallas court was without jurisdiction; for it does not appear that the child was within its jurisdiction at the time the issue of custody was determined. There is no recital in the judgment which indicates a finding to that effect. On the contrary, it appears from the pleadings of the plaintiffs in that case that the child must have been with its legal custodian in the state of Georgia. If that be true, as is stated by the appellant in his replication, the validity of the Dallas court judgment is open to attack upon that ground also. There is little or no diversity of opinion in respect to the nullity of judgments in rem when the res is not within the jurisdiction of the court at the time it assumed to act. Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 530, 50 L. Ed. 867, 5 Ann. Cas. 1; Earle v. McVeigh, 91 U. S. 503, 23 L. Ed. 398; Noble v. Union River Logging Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123; Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896; Withers v. Patterson, 27 Tex. 492, 86 Am. Dec. 643; Paul v. Willis, 69 Tex. 265, 7 S. W. 357.

For the reasons stated I think the trial court erred in sustaining the demurrer to the appellant's replication, and that its judgment should be reversed.