Charles Reed ENGLISH, Independent
Executor of the Estate of Mae Cobb
English, Deceased, Petitioner,

v.

Nan L. COBB, Respondent.

No. B–8380.

Supreme Court of Texas.

Dec. 12, 1979.

Carter, Gordon & Von Doenhoff, Charles L. Carter, Jr., Crockett, for petitioner.

Clark Anderson, Lufkin, for respondent.

GREENHILL, Chief Justice.

This case involves the jurisdiction of the Angelina County Court at Law to determine an estate's rights in a $15,900.44 savings account held in the names of the deceased and her sister. The court of civil appeals determined that the county court at law had no jurisdiction to hear the case since the amount in controversy exceeded the county court's jurisdictional amount as prescribed in Article 1970–355.[1] Consequently, the court of civil appeals reversed the judgment of the county court, and dismissed the case without considering the merits of the appeal. 579 S.W.2d 22. We are of the opinion that the court of civil appeals erred in its interpretation of the statutes defining the jurisdiction of the county court at law in probate matters. Accordingly, we reverse its judgment, and remand the cause to that court for its determination of the merits.

Charles Reed English, independent executor of the estate of Mae Cobb English, filed suit in the Angelina County Court at Law against Ms. Nan L. Cobb, sister of the deceased.[2] The suit alleged that Ms. Cobb had wrongfully withdrawn $15,900.44 of Mrs. English's money from a savings account after Mrs. English's death. The executor, English, on behalf of the estate, sought recovery of that amount.

At trial, it was established that both Mrs. English and Ms. Cobb had been signatories

---

1. Statutory references are to Vernon's Texas Civil Statutes Annotated.

2. This action was brought in the same court where the probate of Mrs. English's estate was pending.

on a savings account originally opened by Mrs. English. After Mrs. English's death, Ms. Cobb transferred the balance of that account to her bank in Galveston, contending that she had a legal right to withdraw that money since hers was one of the signatures on the savings account. The ultimate question for the trial court's determination was whether the circumstances surrounding the addition of Ms. Cobb's name to the signature card created a joint tenancy with a right of survivorship in the savings account. Upon conclusion of the trial, the county court at law found that no joint tenancy with right of survivorship had been created and that Ms. Cobb had wrongfully withdrawn the money from the savings account. The county court entered judgment for Executor English in the amount of $15,900.44.

Since the court of civil appeals dismissed the appeal of this case on jurisdictional grounds, the sole issue presented to this Court is whether the Angelina County Court at Law had jurisdiction to adjudicate the estate's rights to the money in the savings account.

■ Article 1970–355, § 1(b), as amended in 1977, defines the jurisdiction for the County Court at Law for Angelina County. It provides:

*The county court at law has the same jurisdiction over all causes and proceedings, civil, criminal, and probate, original and appellate, prescribed by law for county courts, and its jurisdiction is concurrent with that of the County Court at Angelina County. The county court at law also has jurisdiction concurrent with the district court . . . in civil cases when the matter in controversy exceeds $500 and does not exceed $10,000, exclusive of interest. [Emphasis added].*

A close reading of the statute reveals that the Angelina County Court at Law is not subjected to a jurisdictional limit, either minimum or maximum, *when the court sits in probate.* Rather, the $10,000.00 jurisdictional limit on the amount in controversy applies only to those *civil cases* where the county court *exercises concurrent jurisdiction with the district court.* The limitation does not apply to those cases being tried in the county court under its probate jurisdiction.

■ Ms. Cobb contends that the instant suit is not one that falls within the county court's probate jurisdiction. Instead, she argues that this suit is actually an ordinary suit for conversion, a *civil action* arising out of an allegedly wrongful retention of money. Thus, she contends that Executor English's suit was properly dismissed by the court of civil appeals, since the amount in controversy exceeds $10,000.00. Accordingly, she argues that this suit should have been brought in district court.

In the course of examining this contention, it is necessary to address the recent changes in the constitutional and statutory provisions prescribing the jurisdictional powers of the county courts at law when sitting in probate.

Prior to 1973, the pertinent statutory and constitutional provisions were interpreted to define strictly the jurisdiction of county and district courts over matters brought with respect to the property involved in an estate. It was established that the county courts, while having general probate jurisdiction, did not have the power to determine the ownership of property, real or personal, for the purpose of determining what property was properly includable in the estate. *See, e. g., Johnston v. Stephens,* 121 Tex. 374, 49 S.W.2d 431 (1932); *H. D. Lee Mercantile Co. v. Thompson,* 161 S.W.2d 581 (Tex.Civ.App.—Dallas 1942, no writ). Nor did the county court have the power to construe the provisions of a will, where title to property was involved. *See, e. g., Langehennig v. Hohmann,* 139 Tex. 452, 163 S.W.2d 402 (1942). The county court was also denied the power to determine the validity of claims rejected by the administrator of the estate. *See, e. g., Poole v. Rutherford,* 199 S.W.2d 665 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n. r. e.). Instead, the district court had jurisdiction over these suits. The county court had to await the district court's decisions on these matters before it could administer the

contested part of the estate, and the settlement of the estate was greatly delayed while separate proceedings made their way through the courts. The county court, by itself, was confined to the performance of certain limited functions of probate, including the probation of the testator's will and the assimilation, management, and distribution of the estate.

In 1973, however, the Legislature modified the jurisdictional framework of probate matters in an effort to streamline the procedural aspects of probate practice. First, the Legislature proposed an amendment to Article V, section 8 of the Texas Constitution, which provided, in pertinent part:

> The legislature, however, shall have the power, by local or general law, Section 16 of Article V of this Constitution notwithstanding, to increase, diminish or eliminate the jurisdiction of either the district court or the county court in probate matters . . . .

In conjunction with the proposed constitutional amendment, and contingent upon its approval by the voters, the Legislature amended section 5 of the Texas Probate Code so that it provided, in part:[3]

> (d) *All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate,* including but not limited to, *all claims by* or against *an estate,* all actions for trial of title to land incident to an estate and for enforcement of liens thereon incident to an estate, *all actions for trial of right to property incident to an estate,* and actions to construe wills. [Emphasis added].

The Legislature thus proposed to enlarge the county courts' jurisdiction to include the determination of matters, set out above, which had been previously reserved to the district courts.

On November 6, 1973, the electorate approved the amendment to Article V, section 8 of the Texas Constitution. By its own terms, the amendment to section 5 of the Texas Probate Code became effective on that date. Thus, since November 6, 1973, those county courts exercising original probate jurisdiction have had the additional powers, granted above, as well as their pre-existing power to administer an estate.

The obvious purpose of these constitutional and statutory changes was to increase the jurisdiction of the county courts in "matters incident to an estate" so that such courts could more fully and quickly settle a decedent's estate in one proceeding.

In the instant case, Executor English's central complaint is that the money in the savings account has been wrongfully removed from the estate's assets. Ms. Cobb has responded to that complaint by claiming that the savings account was owned jointly by the deceased and herself, with a right of survivorship. The first issue that must be decided in resolving this dispute is the *nature and extent of Mrs. English's right to this savings account.* The determination of a decedent's right to probate assets necessarily falls within the scope of being an action "incident to an estate." Furthermore, the outcome of this suit will have a direct bearing on the assimilation, collection, and distribution of Mrs. English's estate. Thus, the Angelina County Court at Law had jurisdiction over this suit under its general probate powers.

Accordingly, the judgment of the court of civil appeals is reversed, and the cause is remanded to that court for a consideration of the merits of the controversy.

GARWOOD, J., not sitting.

---

3. It is noted that Section 5(d) was amended, and Section 5A was added, by Acts 1979, 66th Leg., ch. 713, p. 1740, effective August 27, 1979.