

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-22-00081-CV

_____

A.H. FARMS, LLC, A TEXAS LIMITED LIABILITY COMPANY, Appellant

V.

STAR CREEK CO., ERIC H. FARLEY, INDIVIDUALLY AND AS THE SUCCESSOR
INDEPENDENT EXECUTOR OF THE ESTATE OF PATRICIA FARLEY HERNANDEZ,
DECEASED, GARY D. CORLEY, JOHN HENRY SKOTNIK, COURT APPOINTED
SUCCESSOR DEPENDENT ADMINISTRATOR WITH THE WILL ANNEXED/ATTACHED
OF THE ESTATE OF EFRIN ARTURO HERNANDEZ, DECEASED, AND W.M. DAVIS
AND MARY H. DAVIS, Appellees

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CV-20-44563

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

In this third appeal of a dispute over the ownership of a 100-acre tract in Fannin County, A.H. Farms, LLC (Farms), appeals the take-nothing judgment rendered against it by the trial court it in its trespass to try title suit. This case is one of several that have been filed over the years dealing with the Estate of Patricia Hernandez, and those claiming through her son by her first marriage, Eric Farley, as opposed to those (including Farms) claiming through her husband at the time of her death, Arturo Hernandez. The central issue in this case is Farms's collateral attack on the validity of a summary judgment entered by the County Court at Law No. 1 of Grayson County (the Grayson Court) and affirmed by the Dallas Court of Appeals in the first appeal of the dispute over the ownership of the 100-acre tract. *See In re Est. of Hernandez*, No. 05-16-01350-CV, 2018 WL 525762, at *8 (Tex. App.—Dallas Jan. 24, 2018, no pet.) (mem. op.).[1] Because we find that Farms's collateral challenge to the Grayson Court's final summary judgment failed and that the final judgment divested Farms of any interest in the 100-acre tract, we will affirm the trial court's judgment.

I.    **Standard of Review and Relevant Caselaw**

"Trespass to try title is the sole method to determine title to land or real property in cases where there is no boundary dispute." *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 669 (Tex. App.—Texarkana 2017, pet. denied) (citing *Martin v. Amerman*, 133

---

[1] We have not been provided the complete records from the probate of Patricia's estate in the Grayson Court. In particular, we have not been provided the applications to be appointed successor executor filed by Patricia's son, Eric Farley, and David Pena or the pleadings and motions filed by the parties in the Grayson Court that resulted in the final summary judgment that was affirmed by the Dallas Court of Appeals. As a result, we rely on the brief discussion in the opinion by the Dallas Court of Appeals of those pleadings and motions to provide relevant background information. We recognize that that court's discussion of those pleadings and motions, however, is not a substitute for the record of the Grayson Court in answering the substantive issues on appeal.

2

S.W.3d 262, 267 (Tex. 2004), *superseded on other grounds* by Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c); *Berg v. Wilson*, 353 S.W.3d 166, 180 (Tex. App.—Texarkana 2011, pet. denied)). "In a trespass to try title suit, 'it is "incumbent on the plaintiff to discharge the burden of proof resting on him to establish superior title."'" *Id.* (quoting *Tipps v. Chinn Expl. Co.*, No. 06-13-00033-CV, 2014 WL 4377813, at *5 (Tex. App.—Texarkana Sept. 5, 2014, pets. denied) (mem. op.)).

"To maintain an action of trespass to try title, the person bringing the suit must have title to the land sought to be recovered." *Id.* at 670 (quoting *Tipps*, 2014 WL 4377813, at *5). "A plaintiff[']s right to recover depends on the strength of his or her own title, not the weaknesses of the title of his or her adversary." *Id.* (alteration in original) (quoting *Tipps*, 2014 WL 4377813, at *5). "A plaintiff is not entitled to recover unless the plaintiff's own title is effectively disclosed." *Id.* (quoting *Tipps*, 2014 WL 4377813, at *5). "Recovery can be based on proof of . . . superior title out of a common source . . . ." *Id.* (quoting *Tipps*, 2014 WL 4377813, at *5). "On the failure of a plaintiff to establish superior title in a trespass to try title suit, the proper course of action is for the trial court to enter a take-nothing judgment." *Id.* (quoting *Tipps*, 2014 WL 4377813, at *5).

## II.    The Evidence at Trial and Procedural Background

Patricia Hernandez died on January 15, 2001, and left a will that devised the residuary of her estate to her husband, Arturo Hernandez, "to do with as he desires." The will further stated that, upon Arturo's death, any of her residuary estate that Arturo "may own or have any interest in" would be devised to her son, Farley. Patricia's residuary estate included, *inter alia*, the 100-

3

acre tract. On January 30, 2002, Arturo, who had been named independent executor under her will, filed his application to probate Patricia's will and for letters testamentary in cause number 2002-40P, in the County Court of Grayson County.[2] On July 18, 2002, Arturo, as independent executor of Patricia's estate, conveyed some of the real property in her estate to himself, individually.[3] On June 18, 2009, Arturo, individually, conveyed the 100-acre tract to Farms, a member-governed, limited-liability company of which Arturo was the sole member. Arturo died on October 3, 2013, and Pena was appointed independent executor of Arturo's estate on December 15, 2014, by the County Court at Law of Fannin County (Fannin CCL).

According to the Dallas Court of Appeals,[4]

On October 22, 2014, Eric Farley filed an application requesting to be appointed successor independent executor of the Patricia Hernandez estate because it had not been closed and issues remained concerning the property owned by Patricia Hernandez. On December 4, 2014, Pena filed an application requesting that he be appointed the successor independent administrator and an application to close the independent administration.

On February 17, 2015, Eric Farley filed his first petition for a declaratory judgment and construction of the will. In part, he requested a declaration that under Paragraph IV of the will Arturo Hernandez acquired a life estate, which then passed to Eric Farley in fee simple absolute. On March 31, 2015, Pena filed a counter-petition for declaratory judgment. . . .

On March 27, 2015, Eric Farley filed his motion for traditional summary judgment arguing he was entitled to judgment, as a matter of law, because there was no issue of material fact necessary to establish that the will created a life estate in Arturo Hernandez. Pena responded, in part, that Patricia Hernandez's will left her property to Arturo Hernandez in fee simple absolute when she stated

---

[2]Farms asserts in its brief, and Appellees do not dispute, that the case was almost immediately transferred to the Grayson Court.

[3]It is undisputed that this property included the 100-acre tract.

[4]The opinion of the Dallas Court of Appeals was admitted into evidence at trial.

he could "use the property however he wishes . . . and [he] did just that when he deeded the property to himself." Further, Pena asserted that the property was distributed and nothing remains to be distributed to Eric Farley.[5]

*In re Est. of Hernandez*, 2018 WL 525762, at *3 (alteration in original). The Grayson Court initially denied Farley's motion because it found Patricia's will ambiguous. *Id.* After a jury determined that Patricia intended to leave Arturo a life estate, the trial court entered a declaratory judgment on October 26, 2016, that incorporated the jury's verdict and awarded Farley attorney fees (the Declaratory Judgment). *Id.* Farley then filed a motion for reconsideration of his motion for summary judgment in light of the jury's verdict and seeking "an order confirming that Patricia['s] . . . property possessed by [Arturo] at his death passed to him." *Id.* at *4 n.8.

On November 10, 2016, the Grayson Court entered an order appointing Farley as the successor independent executor of Patricia's estate. On that same date, the Grayson Court granted Farley's motion for summary judgment, in which it (1) found three tracts of land, including the 100-acre tract, were among "the real property belonging to [Patricia's estate] which was possessed by [Arturo], or in which [Arturo] had an interest . . . at the time of his death" and (2) ordered that Farley, as successor independent executor of Patricia's estate, have and recover the three tracts, including the 100-acre tract, from Pena, as independent executor of Arturo's estate (the Summary Judgment).[6]

---

[5]The court of appeals also noted that "[i]t was Pena's position that [he] inherited the property . . . from Arturo." *In re Est. of Hernandez*, 2018 WL 525762, at *3 n.7.

[6]Pena filed an inventory in Arturo's estate that listed Farms as personal property owned by Arturo at the time of his death, with a notation that Farms owned the 100-acre tract.

Pena filed a notice of appeal in the Dallas Court of Appeals that appealed both the Declaratory Judgment and the Summary Judgment.[7]  However, Pena only asserted one issue in his brief that related to the Declaratory Judgment and did not challenge the Summary Judgment. *Id.* at *4, *8.

On appeal, the Dallas Court of Appeals construed the residuary clause of Patricia's will to "unambiguously, as a matter of law, convey[] the property of [Patricia] to [Arturo] in fee simple determinable" and to "devise[] to [Farley] whatever interest [Arturo], upon his death, still held in the property." *Id.* at *8.  It also noted that Arturo's death "automatically divested his estate of the remaining devised property operating as a fee simple determinable causing that property to pass to [Farley] in fee simple absolute." *Id.*  As a result, the court of appeals reversed the Declaratory Judgment and rendered judgment that Patricia's will "conveyed the property in fee simple determinable to [Arturo] with an executory interest to [Farley] in fee simple absolute." *Id.*

However, as to the Summary Judgment, the court of appeals noted that "it specifically identifie[d] the real property belonging to [Patricia]'s estate 'that was possessed by [Arturo] or in which [Arturo] had an interest . . . at the time of his death' and award[ed] that real property to [Farley]." *Id.*  Because Pena did not challenge the Summary Judgment on appeal, the court of appeals affirmed the Summary Judgment. *Id.*  The judgment of the Dallas Court of Appeals was not appealed, and the court issued its mandate on April 6, 2018.

---

[7]The Dallas Court of Appeals deemed the Declaratory Judgment and the Summary Judgment together to comprise the final judgment. *In re Est. of Hernandez*, 2018 WL 525762, at *1 n.1.

6

On January 10, 2017, Farley, as successor independent executor of Patricia's estate, conveyed certain property to Farley, individually, and to Gary D. Corley by a special warranty deed. On October 24, 2017, Pena was removed as independent executor of Arturo's estate, and John Skotnik was appointed as successor executor. The Fannin CCL then entered an order granting an application for an order of sale on July 11, 2019, and based on the opinion of the Dallas Court of Appeals, found that 313.37 acres of land[8] that then stood in the names of Arturo and Farms were not property of Arturo's estate or of Pena's, as sole beneficiary of Arturo's estate. The Fannin CCL went on to order Pena and Skotnik, as successor executor of Arturo's estate, to execute a deed conveying the 313.37 acres to Farley on behalf of Arturo's estate and on behalf of Farms.[9] That order was not appealed. On August 14, 2019, Skotnik, as successor executor of Arturo's estate and on behalf of Farms, executed a special warranty deed conveying the 313.37 acres to Farley.[10] Thereafter, Farley and Corley conveyed the 313.37 acres to Star Creek Co., Inc., which in turn conveyed it to W.M. and Mary H. Davis.

Farms filed this suit in the 336th Judicial District Court of Fannin County against Star Creek; Farley, individually and as successor independent executor of Patricia's estate; Corley; Skotnik, as the successor administrator of Arturo's estate; and the Davises. In its live petition for trespass to try title, Farms sought to set aside the following deeds, as they relate to the 100-acre tract:

---

[8]These appear to be the same tracts of land that were awarded to Farley in the Summary Judgment.

[9]The order also found that its purpose was "to clarify title."

[10]It is undisputed that the 313.37 acres included the 100-acre tract.

7

1.       from Farley, as successor independent executor of Patricia's estate, to Farley, individually, and Corley;

2.       from Skotnik, on behalf of Farms, to Farley;

3.       from Farley and Corley to Star Creek; and

4.       from Star Creek to the Davises.

It also sought judgment that its title was superior to any interest of the Appellees and a writ of possession. After the parties filed opposing motions for summary judgment, on October 3, 2022, the trial court granted Farley, individually, and Corley's motion on the grounds of collateral attack on the Summary Judgment that was affirmed by the Dallas Court of Appeals and granted Star Creek's motion on the grounds of res judicata, collateral estoppel, impermissible collateral attack on the Summary Judgment affirmed by the Dallas Court of Appeals, and law of the case doctrine. The trial court denied the other parties' motions for summary judgment. The defendants, other than Farley, individually, Corley and Star Creek, then filed amended answers, entered pleas of not guilty, asserted a general denial, and asserted various special and affirmative defenses, including res judicata, collateral estoppel, impermissible collateral attack on a valid judgment, and law of the case doctrine.

At the final hearing, Farms introduced the deed from Arturo, as independent executor of Patricia's estate, to Arturo and the deed from Arturo to Farms, discussed above, and its response to the defendants' demand for abstract of title upon which Farms relied.[11] The abstract of title contained references to each of the deeds discussed above, the Summary Judgment, the opinion

---

[11]*See* TEX. R. CIV. P. 791 ("[E]ither party may, by notice in writing, duly served on the opposite party or his attorney of record, . . . demand an abstract in writing of the claim or title to the premises in question upon which he relies.").

of the Dallas Court of Appeals, and the order of sale entered by the Fannin CCL. The Appellees introduced the remaining evidence discussed above. After the final hearing, the trial court entered a take-nothing judgment in favor of all of the Appellees and found that title vested in the Davises.

## III. Analysis

The central issue in this case is whether Farms is bound by the Summary Judgment, as affirmed by the Dallas Court of Appeals. Farms asserts that, because the Summary Judgment is void, it is not bound by it.[12] "[A] litigant may attack a void judgment [either] directly or collaterally." *In re Barber Fam. Corp.*, No. 06-22-00087-CV, 2022 WL 17843997, at *2 (Tex. App.—Texarkana Dec. 22, 2022) (orig. proceeding) (mem. op.) (alterations in original) (quoting *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012)). "A direct attack—such as an appeal, a motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment and must be brought within a definite time period after the judgment's rendition." *Id.* (quoting *PNS Stores, Inc.*, 379 S.W.3d at 271). "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the

---

[12]The Appellees and the trial court characterized Farms's collateral attack on the Summary Judgment as an affirmative defense of "impermissible collateral attack on a valid judgment." However, we construe the Appellees' assertion of the Summary Judgment, which awarded title to Farley, as a bar to Farms's title claim. *See* TEX. R. CIV. P. 789 ("Under such plea of 'not guilty' the defendant may give in evidence any lawful defense to the action except the defense of limitations . . . ."). When Appellees introduced into evidence the Summary Judgment, which awarded title to Farley, and the opinion of the Dallas Court of Appeals affirming it, they established their prima facie case that the Summary Judgment barred Farms's title claim. Because Farms had the burden to establish its title, the burden shifted to Farms to demonstrate that the Summary Judgment was void.

9

judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) (citing *Crawford v. McDonald*, 33 S.W. 325, 327 (Tex. 1895)).

> While "a void judgment may be collaterally attacked" at any time, "[a] judgment is void only when it is apparent that the court rendering judgment 'had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'"

*In re Barber Fam. Corp.*, 2022 WL 17843997, at *2 (alteration in original) (quoting *Browning*, 165 S.W.3d at 346). "The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it either: (1) establishes that the trial court lacked subject[-]matter jurisdiction over the suit; or (2) exposes such personal jurisdictional deficiencies as to violate due process." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012) (citing *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam)).

Generally, a collateral attack on a judgment "must be based on evidence in the record of that proceeding." *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 614–15 (Tex. 1992). For that reason, "as a general rule, extrinsic evidence cannot be considered in a collateral attack to set aside a final judgment." *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 190 (Tex. 2022) (citing *Templeton v. Ferguson*, 33 S.W. 329, 332–33 (Tex. 1895); *Crawford*, 33 S.W. at 328). "Where the record is *silent* as to facts concerning jurisdiction, it is *conclusively* presumed that all the facts not appearing of record were found by the court in favor of its jurisdiction." *McLeod v. Carroll*, 109 S.W.2d 316, 321 (Tex. App.—Texarkana 1937) *aff'd sub nom Carroll v. McLeod*, 130 S.W.2d 277, 282 (Tex. [Comm'n Op.] 1939) (citing *Bouldin v. Miller*, 28 S.W. 940, 941 (Tex. 1894)); *see Templeton v. Ferguson*, 33 S.W. 329, 333 (Tex. 1895) ("[I]f the record . . . does not negative the existence of the facts authorizing the court to make the

particular order, the law conclusively presumes that such facts are established by the evidence before the court when such orders or judgments were rendered."). As a result, if the party asserting the collateral attack on the judgment does not present the appellate court with the record, "his collateral attack must fail." *Bandy*, 835 S.W.2d at 615. However, if the court rendering the challenged judgment has not been given subject-matter jurisdiction, whether by statute or by the Constitution, then "[t]he law raises no presumptions in their support." *Templeton*, 33 S.W. at 332; *see MAP Res., Inc.*, 649 S.W.3d at 190.

Farms challenges the Summary Judgment on two grounds. First, it asserts that the Grayson Court did not have subject-matter jurisdiction to determine the title to the 100-acre tract. Farms also asserts that the Grayson Court lacked personal jurisdiction over Farms.

## A.    Subject-Matter Jurisdiction of the Grayson Court

As we have previously noted, we have not been provided with the record of the Grayson Court proceeding in which it entered the Summary Judgment. Ordinarily, our inquiry would end there, and Farms's collateral attack on the Summary Judgment would fail. *Bandy*, 835 S.W.2d at 614–15. However, Farms asserts that the Grayson Court was not given jurisdiction to determine title of the 100-acre tract by the statute governing its jurisdiction. *See Templeton*, 33 S.W. at 332; *MAP Res., Inc.*, 649 S.W.3d at 190. Consequently, we must first determine the extent of the Grayson Court's jurisdiction under the relevant statute.

Patricia's estate was opened in January 2002. As Farms acknowledges in its brief, the jurisdiction of a county court at law sitting in probate is determined by the law in effect on the

date the decedent's estate was opened.[13]  *Hailey v. Siglar*, 194 S.W.3d 74, 78 n.1 (Tex. App.—

Texarkana 2006, pet. denied).[14]   In 2002, the jurisdiction of a county court at law sitting in

probate was governed by Sections 5 and 5A of the Texas Probate Code.  Section 5 gave county

courts at law original probate jurisdiction, which included "the power to hear all matters incident

to an estate."  Act of May 1, 2001, 77th Leg., R.S., ch. 63, § 1, sec. 5(c), (f), 2001 Tex. Gen.

Laws 104, 104–05 (repealed 2009).  Under Section 5A "incident to an estate" in proceedings in

county courts at law included, *inter alia*:

> all actions for trial of title to land incident to an estate and for the enforcement of
> liens thereon incident to an estate, all actions for trial of the right of property
> incident to an estate, and actions to construe wills, and generally all matters
> relating to the settlement, partition, and distribution of estates of deceased
> persons.

Act of May 30, 1993, 73d Leg., R.S., ch. 957, § 6, sec. 5A(a), 1993 Tex. Gen. Laws 4081, 4161

(repealed 2009).

While Farms agrees that the Grayson Court had this jurisdiction under Section 5A, it

argues that its jurisdiction "incident to an estate" in regard to actions for trial of title to land only

extended to real property that was property of the estate.  It notes that the Texas Estates Code

gives county courts at law sitting in probate jurisdiction over "all matters related to a probate

---

[13]Farms also acknowledges that the Grayson Court had probate jurisdiction in the case.  *See* TEX. GOV'T CODE ANN. § 25.0003(d) (Supp.), § 25.0932(a), (c)(2).

[14]*See* Act of June 1, 2009, 81st Leg., R.S., ch. 1351, § 12(h), (i), sec. 4H, 2009 Tex. Gen. Laws 4273, 4279 (providing that a "proceeding commenced before the effective date of this Act is governed by the law in effect on the date . . . the proceeding  was commenced," and continuing the former law, including repealed Sections 5 and 5A of the Texas Probate Code, in effect for that purpose).  Under the Section 2(e) of the Texas Probate Code in effect at the time Patricia's estate was filed, the administration of an estate was one proceeding in rem, "from the filing of the application for probate and administration, . . . until the decree of final distribution and the discharge of the last personal representative."  Act of May 30, 1993, 73d Leg., R.S., ch. 957, § 2, 1993 Tex. Gen. Laws 4081, 4158 (redesignated 2013) (current version at TEX. EST. CODE § 32.001(d)).

proceeding," TEX. EST. CODE ANN. §§ 31.001(a), which includes "an action for trial of title to real property that is estate property," TEX. EST. CODE ANN. § 31.002(a)(5). *See* TEX. EST. CODE ANN. § 31.002(b)(1). It reasons that, since the purpose of the Texas Estates Code was to modernize the language without changing the substantive law, TEX. EST. CODE ANN. § 21.001(a), (b)(4), then "trial for title of land incident to an estate" under Section 5A meant trial of title to land that was "property of the estate."

This brings us to the heart of the matter. Farms argues that none of the property awarded by the Grayson Court in the Summary Judgment was property of Patricia's estate because the Dallas Court of Appeals, on appeal, determined that Arturo received a fee simple determinable interest in Patricia's residual estate. Consequently, Farms argues, since Arturo conveyed the 100-acre tract to it during his lifetime, and since the rest of the residual estate vested in Farley on Arturo's death, there was no property of Patricia's estate involved.

However, Farms's construction ignores that the Estates Code's enacting legislation kept the former law in effect for proceedings commenced before the date of its enactment. As has been seen, the law in effect at the time the proceeding in Patricia's estate was commenced gave a county court at law sitting in probate jurisdiction over all matters incident to an estate. In *English v. Cobb*, the Texas Supreme Court determined a county court at law's jurisdiction under the 1973 amendment to Section 5 of the Probate Code that first gave it jurisdiction to hear "matters incident to an estate." *English v. Cobb*, 593 S.W.2d 674, 676 (Tex. 1979). In that case, the independent executor of Mae Cobb English's estate filed suit in the County Court at Law of Angelina County to determine the estate's rights in a savings account held in the names of

13

English and her sister, Cobb. The executor alleged that Cobb had wrongfully withdrawn the monies in the account and sought recovery of the money. *Id.* at 674. Cobb maintained that she was entitled to the monies because the account was a joint tenancy with right of survivorship. The trial court found no joint tenancy and entered judgment for the executor. Cobb appealed and argued that the trial court did not have jurisdiction because the suit was a suit for conversion and the amount of money exceeded $10,000.00. The court of appeals agreed. *Id.* at 675.

The Supreme Court first determined that the purpose of the 1973 amendments to Section 5 "was to increase the jurisdiction of the county courts in 'matters incident to an estate' so that such courts could more fully and quickly settle a decedent's estate in one proceeding." *Id.* at 676. It then examined the parties' pleadings to determine whether the suit fell within that jurisdiction:

> In the instant case, Executor English's central complaint is that the money in the savings account has been wrongfully removed from the estate's assets. Ms. Cobb has responded to that complaint by claiming that the savings account was owned jointly by the deceased and herself, with a right of survivorship. The first issue that must be decided in resolving this dispute is the Nature and extent of Mrs. English's right to this savings account. The determination of a decedent's right to probate assets necessarily falls within the scope of being an action "incident to an estate."

*Id.* It also noted that the suit was incident to an estate because "the outcome of [the] suit [would] have a direct bearing on the assimilation, collection, and distribution of Mrs. English's estate."[15]

*Id.*

---

[15]As the court noted, Section 5A, which provided that "incident to an estate" included "all matters relating to the settlement, partition, and distribution of estates," was added effective August 27, 1979. *English*, 593 S.W.2d at 676, n.3 (citing Act of May 17, 1979, 66th Leg., R.S., ch. 713, sec. 5A(a), 1979 Tex. Gen. Laws 1740, 1741.

While the 1973 amendments increased the jurisdiction of county courts at law to determine matters incident to an estate, the Texas Supreme Court has also determined that the delineation of what matters were included in matters appertaining to, or incident to, an estate under Section 5A(a) limited the jurisdiction of a county court at law to those matters "in which the 'controlling issue' was the settlement, partition, or distribution of an estate." *Seay v. Hall*, 677 S.W.2d 19, 22 (Tex. 1984), *superseded by statute on other grounds as recognized by Palmer v. Coble Wall Tr. Co.*, 851 S.W.2d 178, 181 (Tex. 1992). Nevertheless, because Section 5A defines specific matters as appertaining to or incident to an estate, "a cause of action is appertaining to or incident to an estate if the Probate Code 'explicitly defines it as such or if the controlling issue in the suit is the settlement, partition, or distribution of an estate.'"[16] *In re SWEPI, L.P.*, 85 S.W.3d 800, 805 (Tex. 2002) (orig. proceeding) (quoting *In re Graham*, 971 S.W.2d 56, 58 (Tex. 1998) (orig. proceeding)).

Section 5A(a) provides that for a county court at law appertaining to or incident to an estate includes both "actions for trial of title to land incident to an estate" and "all matters relating to the settlement, partition, and distribution of estates." Act of May 30, 1993, 73d Leg., R.S., ch. 957, § 6, sec. 5A(a), 1993 Tex. Gen. Laws 4081, 4161. As a result, the Grayson Court had jurisdiction over the challenged procedure under two possible theories: the action was for trial of title to land incident to an estate, or the controlling issue related to the settlement, partition, and distribution of Patricia's estate. *See In re Puig*, 351 S.W.3d 301, 304–05 (Tex. 2011) (per curiam) (orig. proceeding).

---

[16]The Texas Estates Code also provides that a "'probate proceeding' . . . includes: . . . any other matter related to the settlement, partition, or distribution of an estate." TEX. EST. CODE ANN. § 31.001(6).

In *In re Puig*, Puig Bros., a corporation owned by Luis F. Puig, Jr., and his six children, acquired title to a Webb County ranch. In 1999, Luis filed for divorce from the children's mother, Alicia. Alicia filed a counterclaim, but Puig Bros. was not joined as a party. In 2003, the trial court determined that Puig Bros. was Luis's alter ego and awarded Alicia a sixty-percent interest in the ranch. Alicia passed away shortly after the divorce, and the probate of her will, which named her daughter, Alice, as independent administratrix and her sole beneficiary, was opened in the County Court at Law of Fort Bend County (Fort Bend CCL). During the course of her administration, because Luis refused to execute documents transferring the partial interest to Alicia's estate, Alice obtained a special warranty deed executed by a court-appointed special master that transferred a sixty-percent interest in the ranch to Alicia. *Id.* at 303.

After the special warranty deed was recorded in Webb County, three of Alicia's brothers and Puig Bros. filed suit against Alice in a Webb County district court. Because Puig Bros. was not joined as a party to the divorce proceeding, the suit sought to void the special warranty deed, to quiet title, and a declaration that the three brothers and Puig Bros were the rightful owners of title to the ranch. Alice filed a plea to the jurisdiction and a motion to transfer venue to the Fort Bend CCL, where the administration of Alicia's estate was pending. *Id.* After the Webb County district court denied the plea to the jurisdiction, Alice filed a petition for a writ of mandamus. *Id.* at 303–04.

To determine whether the Fort Bend CCL had jurisdiction, the Texas Supreme Court examined the petition filed in the Webb County suit. *Id.* at 304. In finding that the Fort Bend

16

CCL had jurisdiction over the action under the "controlling issue test," the Texas Supreme Court

explained:

> The controlling issue presented in the real parties' Webb County suit undoubtedly involves the settlement, partition, and distribution of Alicia's estate. The petition seeks a declaratory judgment to void the [special warranty deed]. The real parties also seek to quiet title in the ranch by asking the district court to remove the cloud on Puig Bros.' title created by recordation of the [special warranty deed], which they allege was invalid due to the master in chancery's lack of authority to execute the deed and the fact that Puig Bros. did not authorize the conveyance to Alicia.

*Id.* The court also found that the Fort Bend CCL had jurisdiction under an explicit provision of

Section 5A(a), noting that

> the petition includes a trespass to try title claim, which requests that the court "enter judgment [in favor of the real parties] for title to and possession" of the ranch. Actions for trial of title to land are specifically listed in § 5A(a) as "appertaining to" and "incident to" estates.

*Id.* at 304–05 (alteration in original) (citing Act of May 30, 1993, 73d Leg., R.S., ch. 957, § 6,

1993 Tex. Gen. Laws 4081, 4161).

The San Antonio Court of Appeals has also determined that a county court in which a

probate proceeding is pending has jurisdiction under Section 5A(a) under similar circumstances.

In *Saenz v. Saenz*, Jose Saenz executed a will in 1986 that addressed certain real property. He

subsequently executed three deeds relating to the same property. After his death in 1993, an

administration of his estate was opened in the County Court of Jim Hogg County. *Saenz v.

Saenz*, 49 S.W.3d 447, 448 (Tex. App.—San Antonio 2001, no pet.). The grantees under the

deeds filed suit in 1995 that sought "a recovery, a declaratory judgment of ownership, and a

judgment of partition awarding the Plaintiffs and others . . . title and possession to" the real

17

property. *Id.* at 449. In holding that "[t]itle to the land conveyed both by Jose's will and by subsequent deeds [was] a matter appertaining to Jose's estate," the court of appeals cited both the explicit provision regarding suits for trial of title to land and the general provision of matters involving the settlement, partition, and distribution of estates contained in Section 5A(a). *Id.*

The Grayson Court entered two judgments that comprised its final judgment, the Declaratory Judgment and the Summary Judgment. *In re Est. of Hernandez*, 2018 WL 525762, at *1 n.1. In the Declaratory Judgment, the Grayson Court construed the residuary clause of Patricia's will to devise a life estate to Arturo. *Id.* at *3. Farms concedes that the court had jurisdiction to construe Patricia's will under Section 5A(a).

In the Summary Judgment, the Grayson Court (1) found three tracts of land, including the 100-acre tract, were among "the real property belonging to [Patricia's estate] which was possessed by [Arturo], or in which [Arturo] had an interest . . . at the time of his death" and (2) ordered that Farley, as successor independent executor of Patricia's estate, have and recover the three tracts, including the 100-acre tract, from Pena, as independent executor of Arturo's estate (the Summary Judgment). Because that judgment was not challenged and we have not been provided with the record in the Grayson Court proceeding, there is a conclusive presumption that the pleadings supported that judgment. *McLeod*, 109 S.W.2d at 321.

Under the terms of her will, Patricia devised to Farley any of her residuary estate that Arturo owned or had any interest in at the time of his death. The Summary Judgment reflects that the Grayson Court was asked to identify the property that was in Patricia's residuary estate and that passed to Farley under her will, in other words, to identify the property that Arturo

18

owned or had an interest at the time of his death and to award title to and possession of the property. This necessarily required the determination of the title to the property and to award title to and possession of the property.

As a result, the controlling issues involved the settlement, partition, and distribution of Patricia's estate and were therefore appertaining to or incident to her estate under Section 5A(a). *See In re Puig*, 351 S.W.3d at 304; *Saenz*, 49 S.W.3d at 449. Further, actions to try title to land are appertaining to or incident to an estate under Section 5A(a).[17] *See In re Puig*, 351 S.W.3d at 304–05; *Saenz*, 49 S.W.3d at 449. As a result, the Grayson Court had jurisdiction to hear those matters.[18] *In re Puig*, 351 S.W.3d at 305.

Because the record does not affirmatively show that the Grayson Court lacked subject-matter jurisdiction and Farms has not shown that the court lacked jurisdiction under Sections 5 and 5A to enter the Summary Judgment, we overrule this issue.

### B. Personal Jurisdiction

Farms also asserts that the Summary Judgment was void because the Grayson Court did not acquire personal jurisdiction over Farms because it was never served in that suit. Farms notes that it *argued* repeatedly in the trial court that it was not a party in the Grayson Court.

---

[17]Although the Fannin CCL also had jurisdiction to determine title to the property that Arturo inherited from Patricia and owned at the time of his death, it did not have exclusive jurisdiction, but rather concurrent jurisdiction, to do so. *See In re Puig*, 351 S.W.3d at 305.

[18]Farms also complains that the Grayson Court had no jurisdiction to award the property it determined Arturo possessed or had an interest in at the time of his death to Patricia's estate because the estate had no interest in the property. However, the question in this case is whether the Grayson Court had jurisdiction to determine the identity of the property that Arturo inherited from Patricia and that he owned or had an interest in at the time of his death and to make the award, not whether its determination and consequent award were correct.

However, it does not provide any citations to the record that affirmatively show that it was not served or that it did not otherwise participate in the Grayson Court action.[19]

As we have previously noted, we have not been provided with the record of the Grayson Court proceeding. As the party attacking the Summary Judgment, it was Farms's responsibility to provide that record. *Bandy*, 835 S.W.2d at 615. Because it did not, Farms's "collateral attack must fail." *Id.*[20] We overrule this issue.

---

[19]We have reviewed all of the record citations that Farms referenced in support of its assertion that it was not served citation in the Grayson Court action. Although some of the citations referred to pages in Farms's briefs in the trial court in which it maintained it was not a party in the Grayson Court action, none of the citations referred to evidence in the record of the Grayson Court proceeding.

[20]Neither the Summary Judgment nor the opinion of the Dallas Court of Appeals affirmatively show that Farms was not a party to the suit. As discussed above, the Summary Judgment reflects that the Grayson Court was asked to the identify the property that was in Patricia's residuary estate and that passed to Farley under her will, in other words, to identify the property that Arturo owned or had an interest at the time of his death. It made this determination and ordered that Farley, as successor independent executor of Patricia's estate, recover the 100-acre tract from Pena, as independent executor of Arturo's estate. The opinion of the Dallas Court of Appeals makes clear that the evidence in the Grayson Court proceeding showed that Arturo had conveyed the 100-acre tract to Farms, a limited-liability company of which Arturo was the sole member. *In re Est. of Hernandez*, 2018 WL 525762, at *2–3. Consequently, the Summary Judgment and the Dallas Court of Appeals's opinion show that Arturo's interest in the 100-acre tract was an issue in the Grayson Court proceeding. Under the Texas Estates Code, which governed Arturo's estate, Pena, as independent executor of Arturo's estate, had the right and duty to recover possession of all of Arturo's estate and to pursue and defend suits to recover the estate's personal property and title to and possession of land. TEX. EST. CODE ANN. §§ 101.003, 351.054(a); *see Chandler v. Welborn*, 294 S.W.2d 801, 806 (Tex. 1956) (opinion under prior statute). As we have previously stated, "The [executor or] administrator of the estate holds legal title and a superior right to possess estate property." *Est. of Phillips*, No. 06-22-00015-CV, 2022 WL 2919505, at *5 (Tex. App.—Texarkana July 26, 2022, no pet.) (mem. op.) (alteration in original) (quoting *Meekins v. Wisnoski*, 404 S.W.3d 690, 698 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). Because Arturo was the sole member of Farms at the time of his death, Pena, as executor of his estate, was the proper party to protect and preserve Arturo's membership interest, which necessarily meant the protection of Farms's interest in the 100-acre tract. *See Chandler*, 294 S.W.2d at 806; *Smith v. O'Donnell*, 288 S.W.3d 417, 421 (Tex. 2009) ("An executor is a personal representative who 'stands in the shoes' of the decedent . . . [and] may bring the decedent's survivable claims on behalf of the estate." (quoting *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 784, 787 (Tex. 2006)); RONALD R. CRESSWELL, ET AL, 3 *Tex. Prac. Guide: Wills, Trusts, and Est. Plan.* § 11:32 (West, Westlaw through 2023) ("On a member's death, if the LLC is member managed, the management of the LLC will be shifted to the decedent's executor or administrator if the executor or administrator becomes a member"). In the trial and on appeal, Farms unequivocally asserted that Pena, as independent executor of Arturo's estate, was a party to the Grayson Court action.

### C. The Summary Judgment Divested Farms of Its Interest

As we have discussed, the Summary Judgment determined that Arturo either possessed or had an interest in the 100-acre tract at the time of his death and awarded the property to Farley, as successor independent executor of Patricia's estate. This judgment became final when its affirmance by the Dallas Court of Appeals was not appealed. In awarding the title to the 100-acre tract to Farley, the Summary Judgment divested Farms of its interest in the property. As a result, in order to show that it possessed superior title, Farms was required to establish that the Summary Judgment was void. Because Farms failed to do so, the Summary Judgment was a bar to its title, and Farms could not show that it possessed superior title. For that reason, we find that this ground supported the trial court's judgment.[21]

## IV. Disposition

Because the Summary Judgment divested Farms of its interest in the 100-acre tract and Farms did not demonstrate that it was a void judgment, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: July 3, 2023
Date Decided: August 2, 2023

---

[21]Because this ground supports the trial court's judgment, we need not address Farms's other issues.